# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Vernell Davis, et al.,

                  Plaintiffs,      Case No. 1:16-cv-00735

v.                              Michael L. Brown
                                    United States District Judge

Sheriff Thomas E. Brown, et al.,

                  Defendants.

_____/

## OPINION AND ORDER

Shantell Ada Johnson died while in custody at the DeKalb County Jail. A Dekalb County police officer had arrested her the day before on an outstanding warrant when she allegedly ran a stop sign. (Dkt. 1 at ¶¶ 19–20.) At the time, Ms. Johnson was suffering from on-going complications related to a 2010 gunshot injury. (*Id.* at ¶¶ 27–37.) The Jail provided a medical screening upon her arrival and placed her in general population. (*Id.* at ¶ 26.) She died in her cell. (*Id.* at ¶ 37.)

Ms. Johnson's mother sued the DeKalb County Sheriff and several correctional officers who worked at the Jail, claiming they violated her daughter's constitutional right to necessary medical aid as a pretrial

detainee.  (Dkt. 1.)  The Court granted Defendants' motion to dismiss several claims but allowed others to continue.  (Dkt. 12 at 13.)  At the close of discovery, Defendants moved for summary judgment on the remaining claims.  (Dkt. 67.)  The Court grants Defendants' motion.

## I.    Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "No genuine issue of material fact exists if a party has failed to 'make a showing sufficient to establish the existence of an element . . . on which that party will bear the burden of proof at trial.'"  *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186–87 (11th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).  A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case."  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial responsibility of asserting the basis for its motion. *Celotex*, 637 F.3d at 323. The movant is not, however, required to negate the nonmovant's claim. *Id.* at 324. Instead, the moving party may meet her burden by " 'showing' — that is, pointing to the district court — that there is an absence of evidence to support the non-moving party's case." *Id.* After the moving party has carried its burden, the non-moving party must present competent evidence that there is a genuine issue for trial. *Id.*

The court must view all evidence and factual inferences in a light most favorable to the non-moving party. *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). But "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48.

## II. Factual Background

In March 2013, officers booked Ms. Johnson into the DeKalb County Jail. (Dkts. 67-2 at ¶ 1; 71 at ¶ 1.) Plaintiff alleged in her complaint that, when Ms. Johnson got to the Jail, she complained of

vomiting and abdominal pain. (Dkt. 1 at ¶ 22.) She also alleged Ms. Johnson wore a visible colostomy bag. (*Id.* at ¶ 26.)

The undisputed evidence, however, does not support Plaintiff's allegations. Correct Care Solutions ("CCS") provides medical screenings to inmates being booked into the Jail and provides necessary medical care to inmates while in custody. (Dkts. 67-2 at ¶ 2; 71 at ¶ 2.) When it screened Ms. Johnson, CCS noted she had no colostomy bag. (Dkts. 67-2 at ¶ 3; 71 at ¶ 3.) Plaintiff presented no evidence to contest this fact or to support her claim that Ms. Johnson was wearing such a device.

CSS determines whether inmates with medical issues can be housed in general population rather than in the medical ward. (Dkt. 67-2 at ¶ 9.) Once it identifies a medical or mental health issue, it provides inmates with colored wristbands. CCS cleared Ms. Johnson for housing in general population rather than in the medical ward. (Dkts. 67-2 at ¶ 10; 71 at ¶ 10.)

Because of privacy requirements, CCS does not disclose information about an inmate's medical condition to jail employees unless an employee needs the information to protect the inmate's health or safety. (Dkt. 67-2 at ¶ 4.) There is no evidence CCS shared any information about Ms.

Johnson's medical condition with any Defendant (or, in fact, any other Sheriff's Office employee).

Plaintiff contends Ms. Johnson needed medical assistance while she was in her cell. (Dkt. 1 at ¶ 27.) She claims Ms. Johnson rang the emergency call button in her cell several times on the day of her arrest and Detention Officer Person — who is not a defendant in this action — told her to stop doing so and refused medical treatment. (*Id.* at ¶¶ 27–28, 30.) She also claims Ms. Johnson and her cellmate rang the buzzer several times the next day and Detention Officer Persons again told them to stop doing so and refused medical treatment. (*Id.* at ¶ 30.) Later that day, Officer Fountain — who also is not a defendant in this action — called over the jail radio for medical assistance. (Dkt. 88-1 at 1.) She told those receiving the call — including Defendant Frazier, a sergeant at the Jail — that Ms. Johnson was unresponsive and not breathing. (Dkts. 67-2 at ¶¶ 11–12; 71 at ¶¶ 11–12.) It is undisputed that prior to receiving the radio transmission, Defendant Frazier was unaware Ms. Johnson needed medical care. (Dkt. 88 at 90:18–24.)

Defendant Frazier and Sergeant Williams (who is not a defendant) responded to the radio call. (Dkts. 67-2 at ¶ 13; 71 at ¶ 13.) Sergeant

Williams checked Ms. Johnson for a pulse and said she was "cold." (Dkts. 67-2 at ¶ 17; 71 at ¶ 17.) No one provided CPR. (Dkt. 93 at 47:8–9; 48:18–19.) Four minutes after Sergeant Williams and Defendant Frazier's arrival at Ms. Johnson's cell, medical personnel — none of whom are defendants in this action — arrived and tried to revive her. (Dkts. 67-2 at ¶ 18; 71 at ¶ 18; 88 at 35:2.)

Other officers also came to Ms. Johnson's cell. Captain Akies — who is not a defendant — was there. (Dkts. 87 at 169:2; 88 at 34:14–18.) When Defendant Sergeant Lawton arrived, Lieutenant Leslie (who is not a defendant) told her to lock down the floor and remain with Ms. Johnson's cellmate. (Dkts. 67-2 at ¶ 20; 71 at ¶ 20; 84 at 20:25–21:6.) Defendant Lawton never saw Ms. Johnson, and there is no evidence she was aware of her medical condition before she arrived at the scene. (Dkts. 67-2 at ¶ 21; 84 at 22:3–4.)

While Plaintiff claims Defendants Frazier and Lawton failed to provide Ms. Johnson necessary medical care, the undisputed evidence shows neither Defendant was aware of her medical condition or had any

contact with her before Officer Fountain raised the alarm.[1]  (Dkts. 67-2 at ¶ 14; 71 at ¶ 14.)  Neither worked the morning shift when Ms. Johnson allegedly rang the inmate emergency call button in her cell, the calls Plaintiff claims Officer Person ignored.  (Dkts. 67-2 at ¶ 15; 71 at ¶ 15.) Both Defendant Frazier and Defendant Lawton submitted evidence that they were unaware of her medical condition or need for medical care before the radio transmission.  (Dkt. 84 at 22:3–4.)  Plaintiff presented no evidence to the contrary.

There also is no evidence that Defendants Sheriff Jeffrey Mann, Sheriff Thomas Brown, or Major Reginald Scandrett were aware of Ms. Johnson's medical condition.  At the time, Defendant Brown was Sheriff of DeKalb County, Defendant Mann was Chief Deputy Sheriff, and Defendant Scandrett was the Jail Division Commander.  (Dkt. 89 at 13:21; 17:19–20.)  The undisputed evidence established that Defendant

---

[1] Plaintiff admits this fact but claims both Defendants were "supposed to perform supervisor functions on the floor and failed to do so." (Dkt. 71 at ¶ 14.)  Whether Defendants should have done something, however, is immaterial to Plaintiff's deliberate indifference claim, as that claim requires subjective knowledge of Ms. Johnson's condition and need for medical treatment. *McElligott v. Foley*, 182 F.3d 1248, 1259 (11th Cir. 1999) (acknowledging the "crucial difference" between allegations that defendant *should have known* of serious medical need versus allegations that defendant was in fact aware but did nothing).

Scandrett oversaw the workings and functioning of the jail, like its budgeting and other facility services. (Dkt. 91 at 15:13–18.) He had no contact with Ms. Johnson and was unaware of her medical condition. (*Id.* at 26:9–12.) Defendant Mann testified that he recalled no grievances about the duress button or the emergency call button. (Dkt. 89 at 16:18–22.) He testified there was no widespread history of not responding to the emergency call buttons in jail cells, nor was there a widespread history of officers failing or refusing to obtain appropriate medical care for inmates. (Dkt. 67-2 at ¶ 26.) As there was no issue with officers providing appropriate medical care and treatment to inmates, Defendants contend in their material facts that there was no apparent need to provide additional training to officers on identifying inmates with medical issues.[2] (*Id.* at ¶¶ 24–27.)

---

[2] In response to each of the facts in this paragraph, Plaintiff simply "denies" them with no further citation to the record that might tend to dispute them. (Dkt. 71 at ¶¶ 25–27.) Because Plaintiff has provided nothing to dispute these material facts — and the Court has found nothing — the Court considers them admitted under Local Rule 56.1B(2)(a).

## III.  Procedural History

Plaintiff, as Administratrix of her daughter's estate, first sued several jail employees in a separate action.  *See Davis v. DeKalb Cty. Sheriff Dep't, et al.*, 1:15-cv-00661-MHC (N.D. Ga. Oct. 14, 2015).  After two amendments to her complaint, she voluntarily dismissed her case in September 2015 and filed this lawsuit five months later.  (Dkt. 1 at 2.)  She asserted nine causes of action against various Defendants under 42 U.S.C. § 1983 and Georgia state law, claiming Defendants violated her daughter's constitutional right to be free from cruel and unusual punishment by denying her necessary medical care while in jail.  (*Id.* at ¶ 1.)  She originally sued Defendants Sheriff Thomas E. Brown, Sheriff Jeffrey Mann, Major Reginald Scandrett, Major Wanda Collins, Sergeant Necha Lawton, Sergeant Eureka Frazier, Officer Christina Persons, and Investigator Rodney Scandrett.  (*Id.* at ¶ 9.)  The Court dismissed all claims against Officers Persons as barred by the statute of limitations and all claims against the remaining Defendants in their official capacities.  (Dkt. 12 at 13–14.)  The Defendants moved for summary

judgment and Plaintiff dismissed several claims.[3]  This Court addresses

Defendants' motions on these claims that remain outstanding:

- Count II – § 1983 claim against Defendant Sergeant Lawton for deliberate indifference to render acceptable medical care;
- Count III – § 1983 claim against Defendant Sergeant Frazier for deliberate indifference to render acceptable medical care;
- Count V – § 1983 claim against Defendant Sheriff Brown for deliberate indifference to render acceptable medical care;
- Count VI – § 1983 claim against Defendant Sheriff Mann for deliberate indifference to render acceptable medical care;
- Count X – Violation of O.C.G.A. §§ 42-5-2, 42-4-4(1)(2), and 42-4-32(d) by all Defendants in their individual capacities;
- Count XII – Negligent Failure to Train and Supervise against Defendants Sheriffs Brown and Mann; and
- Count XIV – Violation of O.C.G.A. § 15-16-24 against Defendants Sheriffs Brown and Mann for misconduct of their jailors.

The Court notes that, in responding to Defendants' motion, Plaintiff

largely disregarded Local Rule 56.1B, which requires a nonmovant to

refute directly each of a movant's facts with concise responses and

---

[3] In her response to Defendants' motion for summary judgment, Plaintiff withdrew Count VII against Major Scandrett, Count VIII against Major Wanda Collins, and Count IX against Investigator Scandrett.  (Dkt. 70 at 22.)

specific citations to evidence.  LR 56.1B(2)(a)(2), NDGa.  For the most part, Plaintiff simply denied Defendants' claims of undisputed facts or stated she "is without sufficient information to respond" to various paragraphs in Defendants' statement of material facts.  (Dkt. 71.)  Plaintiff had eight months to conduct discovery and obtain the necessary information — if it existed — to dispute Defendants' statements of material fact.  (Dkt. 18.)  She also failed to file her own statement of material facts about which she believed genuine issues exist.  *See* LR 56.1B(2)(b), NDGa (requiring the nonmovant to file a "statement of additional facts which the respondent contends are material and present a genuine issue for trial").

Because Plaintiff violated Local Rule 56.1B, this Court considers admitted each of Defendants' facts to which Plaintiff failed to respond properly.  *See* LR 56.1B(2) ("This Court will deem each of the movant's facts as admitted unless the respondent . . . directly refutes the movant's fact with concise responses supported by specific citations to evidence . . . ."); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) ("Plaintiffs['] failure to comply with local rule 56.1 is not a mere technicality."); *see also Smith v. Mercer*, 572 F. App'x 676, 678 (11th Cir.

2014) (noting that district court properly deemed defendants' facts admitted under Local Rule 56.1 where plaintiff responded to facts without including citations to evidence of record).

This determination, however, does not discharge Defendants' burden at summary judgment. The Court must still review the evidence to determine whether, based on the undisputed facts, Defendants are entitled to judgment as a matter of law. *Mann*, 588 F.3d at 1303 (citing *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008)).

## IV. Discussion

Plaintiff asserts both federal and state-law claims. The Court discusses each separately.

### A. Federal Claims & Qualified Immunity

Plaintiff claims Defendants violated Ms. Johnson's right to be free from cruel and unusual punishment under the Fourteenth Amendment. (Dkt. 1 at ¶ 1.) Defendants contend they are entitled to qualified immunity against these claims. (Dkt. 67-1 at 10.)

"The defense of qualified immunity protects government officials from individual liability when they are engaged in their job duties unless they violate 'clearly established federal statutory or constitutional rights

of which a reasonable person would have known.' " *WBY, Inc. v. DeKalb Cty.*, 695 F. App'x 486, 490 (11th Cir. 2017) (quoting *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). It allows officials to "carry out their discretionary duties without the fear of personal liability or harassing litigation." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

Qualified immunity may attach only when the officer is "acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Id.* (internal quotation marks omitted). A public official acts within the scope of his discretionary authority where the acts complained of were "undertaken pursuant to the performance of his duties and within the scope of his authority." *See Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir. 1988). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194.

## 1. Defendants Acted Within Their Discretionary Authority.

The parties dispute whether Defendants were acting within their discretionary authority at the time of the incident. (Dkts. 67-1 at 11–12; 70 at 13.) Whether an individual was acting within his or her discretionary authority, however, is a low hurdle, particularly for the qualified immunity analysis. Qualified immunity serves "to defray the social costs of litigation against *government officials*." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998). It therefore follows that

> [w]hen a government official goes completely outside the scope of his discretionary authority, he ceases to act as a government official and instead acts on his own behalf. Once a government official acts entirely on his own behalf, the policies underlying the doctrine of qualified immunity no longer support its application. For that reason, if a government official is acting wholly outside the scope of his discretionary authority, he is not entitled to qualified immunity regardless of whether the law in a given area was clearly established.

*Id.* (citing *Lenz v. Winburn*, 51 F.3d 1540, 1547 (11th Cir. 1995)).

For a defendant to establish that his or her actions were within the scope of their discretionary authority, the defendant must "show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Id.* at 1282. The

constitutional injury complained of here was a lack of rendering proper medical care to a pretrial detainee. The inquiry, then, is whether rendering medical care was within the scope of Defendants' authority and undertaken in performance of their duties. *See id.* at 1282–83 (outlining how to define properly the inquiry into whether defendants were acting within the scope of their discretionary authority). The Court finds the provision of emergency medical care was within the bounds of Defendants' job duties at the Jail and the provision of medical care would not be "wholly outside" the scope of their duties as correctional officers. The Court finds that Defendants have established beyond any genuine issue of material fact that, when the allegedly unconstitutional conduct occurred, they were acting within the scope of their discretionary authority as correctional officers and employees of the DeKalb County Jail.

Although Plaintiff seeks to distinguish discretionary and ministerial duties,[4] she acknowledges in her complaint that "all

---

[4] The distinction between discretionary and ministerial affects the applicability of official immunity under Georgia law, not qualified immunity under federal law. *See Tattnall Cty. v. Armstrong*, 775 S.E.2d 573, 578 (Ga. Ct. App. 2015) (Barnes, P.J., concurring) (recognizing the

defendants were acting within the scope of their employment." (*See, e.g.*, Dkt. 1 at ¶¶ 83, 103, 145.)  The Court thus concludes that, for purposes of the qualified immunity inquiry, all Defendants were acting within their discretionary authority.

## 2. Defendants Are Entitled to Qualified Immunity.

Plaintiff, thus, has the burden of showing that qualified immunity is unavailable to Defendants.  The qualified immunity analysis presents two questions: first, whether the allegations taken as true establish the violation of a constitutional right; and second, if so, whether the constitutional right was clearly established when the violation occurred. *Hadley v. Gutierrez,* 526 F.3d 1324, 1329 (11th Cir. 2008).  These distinct questions "do not have to be analyzed sequentially; if the law was not clearly established; [a court] need not decide if the [d]efendants actually violated the [plaintiff's] rights, although [a court is] permitted to do so." *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011).

A determination of whether a constitutional right was clearly established "must be undertaken in light of the specific context of the

---

inherent confusion of the "nomenclature we use in this area of law"), *overruled on other grounds by Rivera v. Washington*, 784 S.E.2d 775 (Ga. 2016).

case, not as a broad general proposition." *Saucier v. Katz,* 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan,* 555 U.S. 223 (2009). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotation marks omitted)). Put differently, "[u]nless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." *Lassiter v. Ala. A&M Univ., Bd. of Trs.,* 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002).

A plaintiff may show that a defendant's conduct violated clearly established law in one of three ways. *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012). "First, the words of the pertinent federal statute or federal constitutional provision in some cases will be specific enough to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity, even in the total absence of case law." *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002) (emphasis removed). Second, "some broad statements of principle in case law are not tied to particularized facts and can clearly establish law applicable in the future to different sets of detailed facts." *Id.* at 1351. These first two methods involve narrow circumstances with "obvious clarity." *See Loftus*, 690 F.3d at 1204–05; *see also Santamorena v. Ga. Military Coll.*, 147 F.3d 1337, 1340 n.6 (11th Cir. 1998) (noting that "these exceptional cases rarely arise").

Third, and more commonly, a plaintiff may show that a defendant's conduct violated clearly established law by pointing to "materially similar precedent from the Supreme Court, [the Eleventh Circuit], or the highest state court in which the case arose." *Gates*, 884 F.3d at 1296. While the facts of the case need not be identical, "the unlawfulness of the

conduct must be apparent from pre-existing law." *Coffin v. Brandau,* 642

F.3d 999, 1013 (11th Cir. 2011); *see also Gennusa v. Canova,* 748 F.3d

1103, 1113 (11th Cir. 2014) (quoting *Stanton v. Sims*, 571 U.S. 3, 5 (2013))

("We do not always require a case directly on point before concluding that

the law is clearly established, but existing precedent must have placed

the statutory or constitutional question beyond debate.").  The Eleventh

Circuit has explained:

> [f]or qualified immunity purposes, a preexisting precedent is
> materially similar to the circumstances facing an official
> when the specific circumstances facing the official are enough
> like the facts in the precedent that no reasonable, similarly-
> situated official could believe that the factual differences
> between the precedent and the circumstances facing the
> official <u>might</u> make a difference to the conclusion about
> whether the official's conduct was lawful or unlawful.

*Woodyard v. Ala. Dep't of Corr.*, 700 F. App'x 927, 931–32 (11th Cir. 2017)

(quoting *Marsh v. Butler Cty.*, 268 F.3d 1014, 1032 (11th Cir. 2001) (en

banc)).

   To prevail on a § 1983 claim of deliberate indifference, a plaintiff

must show three things: "(1) a serious medical need; (2) a defendant's

deliberate indifference to that need; and (3) causation between that

indifference and the plaintiff's injury."  *Melton v. Abston*, 841 F.3d 1207,

1220 (11th Cir. 2016) (citing *Mann*, 588 F.3d at 1306–07).  The second

factor — deliberate indifference — consists of three subcomponents: (1) subjective knowledge of a risk of serious harm; and (2) disregard of that risk; (3) by conduct that is more than mere negligence. *Jackson v. West*, 787 F.3d 1345, 1353 (11th Cir. 2015) (internal quotation marks omitted). To avoid summary judgment on a claim for deliberate indifference, therefore, Plaintiff must present evidence that each Defendant was "subjectively aware" of the risk from the denial of medical care. *McElligott*, 182 F.3d at 1255.

Plaintiff has failed to show that, in 2013, it was clearly established that any of the Defendants' conduct violated clearly established law. This conclusion arises almost instantly from Plaintiff's failure to raise an issue of material fact showing that any Defendant was aware Ms. Johnson had any medical problem, sought medical attention, or needed medical assistance — a necessary element of a deliberate indifference to medical need claim. Consider the claims against Sergeant Lawton. Plaintiff failed to present any evidence whatsoever to suggest Sergeant Lawton knew Ms. Johnson needed medical care. No evidence suggests she knew Ms. Johnson had pressed her emergency assistance button, that other officers allegedly ignored these calls, or that she was in any medical

distress. Indeed, Plaintiff concedes: (1) Sergeant Lawton did not work the morning shift when Plaintiff claims Ms. Johnson rang her emergency call button; (2) Lawton had no contact with Ms. Johnson before she (and others) received the radio call from Officer Fountain; (3) Lawton was unaware of Ms. Johnson's physical condition before that time; and (4) upon her arrival at the scene, Lawton followed another officer's instructions to lock down the cell block and remain with Ms. Johnson's cellmate while others tended to Ms. Johnson. (Dkt. 71 at ¶¶ 14–16, 20.) Plaintiff admits Sergeant Lawton never even saw Ms. Johnson. (*Id.* at ¶ 21.)

Plaintiff cites no federal statute or constitutional provision specific enough to establish that Defendant Lawton's conduct was unlawful. Likewise, she presents no broad statement of principle in case law that clearly established the unlawfulness of Lawton's actions. And Plaintiff identifies no case showing a reasonable officer in Sergeant Lawton's position on the day Ms. Johnson died would have known it was unlawful for her to do exactly what she did — respond to the radio call and follow orders to lock down the cell block — rather than personally rendering medial aid. Put differently, Plaintiff cites no case showing it was clearly

established that Sergeant Lawton violated Ms. Johnson's constitutional rights by refusing to provide medical care when Sergeant Lawton was unaware of any need for or denial of medical care. Sergeant Lawton falls within the protections of qualified immunity.

The same is true for the other Defendants. Plaintiff admits Sergeant Frazier also was not working during the shift when Ms. Johnson allegedly used her emergency button. (*Id.* at ¶ 15.) She also admits Sergeant Frazier had neither knowledge that Ms. Johnson need medical care nor contact with her until she responded to the radio dispatch. (*Id.* at ¶¶ 14–16, 20.)

Undisputed evidence establishes that Sergeant Frazier responded to the radio call with Sergeant Williams, who is not a party to this case. When they arrived at Ms. Johnson's cell, Officer Fountain was there with the AED device. (Dkt. 88 at 59:24–25.) Sergeant Williams asked Sergeant Frazier if she wanted to check the body since Ms. Johnson (like Sergeant Frazier) was a woman. (Dkt. 93 at 15:19–20.) When she declined, Sergeant Williams felt Ms. Johnson's hand for a pulse, found none, and said "she's cold." (Dkt. 93 at 52:1.) No one began CPR. (Dkt. 93 at 55:15.) But within three or four minutes, medical personnel arrived

and took over.  (Dkt. 93 at 15:19–16:2.)  Sergeants Williams and Frazier moved aside.  (Dkt. 88 at 61:15.)

Given Plaintiff's admission that Defendant Frazier had no contact with or knowledge of Ms. Johnson before the radio call, any possible claim against Defendant Frazier for deliberate indifference would have to arise within this three- or four-minute window.  The question is whether it was clearly established in March 2013 that this delay in treating Ms. Johnson violated her constitutional rights.  And the Court must conduct this assessment in the context of the surrounding facts.  Specifically, the Court considers that two other officers were on the scene, one of them had found no pulse, another had the defibrillator, neither of the other two took more action, and all three knew medical personnel were on the way. (Dkt. 88 at 67:5–6.)

The Eleventh Circuit has recognized that judicial decisions addressing deliberate indifference to a serious medical need are "very fact specific."  *Youmans v. Gagnon*, 626 F.2d 557, 564 (11th Cir. 2010).  These cases turn on the seriousness of the injury, the length of the delay, and the reason for the delay.  *Id.*  Plaintiff points to no legal authority that would have put Defendant Frazier on notice that it was unlawful for her

to refuse medical care when confronted with the situation she faced. *Id.* at 563 (recognizing that court must undertake qualified immunity analysis "in [the] light of the specific context of the case, not as a broad general proposition").[5]

Defendant Major Reginald Scandrett had no contact with Ms. Johnson or awareness of her need for medical assistance. Similarly, there is no evidence Defendants Sheriff Brown or Sheriff Mann had any contact with Ms. Johnson, knew she needed medical care, or even knew she was in the Jail until after she had died. No authority suggests they should have known their lack of involvement with Ms. Johnson violated her constitutional rights.

Rather than identifying any case remotely similar to the situation facing these Defendants on the day Ms. Johnson died, Plaintiff merely

---

[5] Plaintiff did not allege in her complaint that this three-minute delay violated Ms. Johnson's constitutional rights. She raised the issue only in passing in her response to Defendants' motion for summary judgment. (*See* Dkt. 70 at 21 ("However, Defendant fails to reconcile the four (4) minutes of precious time that was wasted by Frazier, Fountain [non-party], and Williams [non-party].")). Even so, the Court has given it full consideration.

alleges that the right to medical attention while in custody is clearly established.  She claims

> Defendants are still not entitled to qualified immunity as [Plaintiff] has plead sufficient facts to establish that Defendants violated Ms. Johnson's established constitutional rights under the Fourteenth Amendment for their failure to render medical aid to a pre-trial detainee. *Said right is clearly established under the Constitution of the United States.* Thus, Plaintiffs have established that that [sic] qualified immunity does not apply.

(Dkt. 70 at 13 (emphasis added).)  She is correct that pretrial detainees have a constitutional right to medical care.  But such broad propositions do not serve to show that the law was clearly established.  *See D'Aguanno v. Gallagher*, 50 F.3d 877, 880–81 (11th Cir. 1995) (recognizing that "citing precedent which establishes a general right will not do" in overcoming qualified immunity).  Plaintiff makes no showing of materially similar precedent that would have put a reasonable officer in Defendants' position on notice that what they were doing violated a constitutional right.  This is a fatal shortcoming, given that the "unlawfulness of a given act must be made truly obvious, rather than simply implied, by the preexisting law." *Youmans*, 626 F.3d at 563.

In addition to relying on this general principle, Plaintiff cites *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).  That case, however,

concerned a deliberate indifference claim by a transgender prisoner who claimed prison officials failed to prevent another prisoner from assaulting him. *Id.* at 829. In it, the Supreme Court held that "deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment" and that deliberate indifference requires "a showing that the official was subjectively aware of the risk." *Id.* It established — or reaffirmed — these general legal principles but provided no clearly established authority over the situations the Defendants faced on the day in question.

Likewise, Plaintiff's citation to *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090 (11th Cir. 2014), is unhelpful. That case involved deliberate indifference claims arising from prison officers' failure to protect one inmate from his cellmate, who was known by the officials to be violent and who had threatened to attack the plaintiff. *Id.* at 1093–97. It is irrelevant to the facts here and provides no clearly established law governing Defendants' treatment of Ms. Johnson. Indeed, the Eleventh Circuit issued the decision in *Caldwell* more than a year after Ms. Johnson's death, thus making it even more irrelevant.

Beyond the cases cited by Plaintiff, the Court has found no legal authority that would have put a reasonable correctional officer in Defendants' situation on notice that their conduct would violate Ms. Johnson's constitutional rights. Defendants thus are entitled to qualified immunity. *See D'Aguanno*, 50 F.3d at 879–80 (affirming grant of summary judgment based on qualified immunity defense where plaintiffs cited no case law showing right at issue was clearly established).

Because the Court finds Plaintiff has not met her burden on the clearly-established prong of the qualified immunity analysis, it need not decide whether Defendants violated Ms. Johnson's constitutional rights. But since (1) the Supreme Court has held that deliberate indifference to a serious medical need requires a showing that an official was subjectively aware of a medical risk and (2) Plaintiff has conceded that no evidence suggests any Defendant was aware of Ms. Johnson's medical condition, her claim would fail on the first prong of the qualified immunity analysis as well. Plaintiff has also failed to raise any issue of material fact suggesting any Defendant who failed to render medical assistance acted with "more than mere negligence," another requirement for establishing deliberate indifference. *Melton*, 841 F.3d at 1223

(holding deliberate indifference requires, among other things, showing of more than mere negligence). Finally, Plaintiff has not raised an issue of material fact that any of Defendants' actions caused Ms. Johnson's injury. *See Mann*, 588 F.3d at 1307 (holding that deliberate indifference to serious medical claim requires evidence of "causation between indifference and the plaintiff's injury").

For all of these reasons, the Court finds that Defendants are entitled to qualified immunity from Plaintiff's federal § 1983 claims. The Court thus dismisses with prejudice Counts II, III, V, and VI.

## B. State-Law Claims & Official Immunity

### 1. The Court Exercises Supplemental Jurisdiction Over Plaintiff's State-Law Claims.

Plaintiff argues that, if the Court dismisses her federal claims, it should refuse supplemental jurisdiction over her state-law claims and "remand" them to state court. (Dkt. 70 at 28.) The Court cannot issue a remand as Plaintiff filed her claims in federal court. There was no removal. *See Ingram v. Sch. Bd. of Miami-Dade Cty.*, 167 F. App'x 107, 109 (11th Cir. 2006) ("Only in those cases where an action originated in state court and was later removed to federal court should a federal court remand the case back to the state court."); *Carnegie-Mellon Univ. v.*

*Cohill*, 484 U.S. 343, 351 (1988) (noting that remand is not an option when plaintiff originally files in federal court).

Without a federal claim, the Court could dismiss the remaining state-law claims to allow a Georgia court to adjudicate them. *See Ingram*, 167 F. App'x at 108–09 (quoting *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999)) (recognizing that federal courts are "strongly encourage[d] or even require[d]" to dismiss state-law claims "if the federal claims are dismissed prior to trial"); *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) (opining that "[s]tate courts, not federal courts, should be the final arbiters of state law"). Indeed, the Eleventh Circuit has held that, when a court dismisses all federal claims and only state-law claims remain, "the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Eubanks v. Gerwen*, 40 F.3d 1157, 1161–62 (11th Cir. 1994).

A court, however, should not do so when principles of comity and fairness support the exercise of supplemental jurisdiction. *See Cohill*, 484 U.S. at 350 (instructing federal courts to consider "the values of judicial economy, convenience, fairness, and comity in order to decide whether" to exercise supplemental jurisdiction). If the Court were to

dismiss Plaintiff's state-law claims, Georgia law would almost certainly prevent her from refiling in state court. The statute of limitations has long since expired on those claims. And she has already used her one opportunity to refile this case as a renewal action after dismissal. *See* GA. CODE ANN. § 9-2-61(a) (noting that "this privilege of renewal shall be exercised only once"). For these reasons, the Court exercises its supplemental jurisdiction to adjudicate Plaintiff's state-law claims. *See L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 430 (11th Cir. 1984) (suggesting an abuse of discretion in court's dismissal of state-law claims when plaintiff had no ability to obtain state forum).

### 2. Defendants are Entitled to Georgia Official Immunity.

Georgia law immunizes government officials "from suit and liability unless they 'negligently perform a ministerial act or act with actual malice or an intent to injure when performing a discretionary act.'" *Speight v. Griggs*, 579 F. App'x 757, 759 (11th Cir. 2014) (citing *Roper v. Greenway*, 751 S.E.2d 351, 352 (Ga. 2013) and GA. CONST. art. I, § II, par. IX(d)). So, under Georgia law, a public officer may be personally liable only for (1) ministerial acts negligently performed or (2) discretionary acts performed with malice or an intent to injure. *Graham v. Cobb Cty.*,

730 S.E.2d 439, 444 (Ga. App. 2012). Official immunity exists to preserve public employees' independence of action without fear of lawsuits and to prevent a review of their judgment in hindsight. *Id.*

Defendants claim they are entitled to judgment as a matter of law because of Georgia official immunity. (Dkt. 67-1 at 29.) Plaintiff claims they are not because Defendants "either breached ministerial duties or, in the alternative, if the Court finds these duties are discretionary, the Defendants acted outside the scope of their authority." (Dkt. 70 at 25.) The Court agrees with Defendants.

### a. Defendants' Actions Were Discretionary.

Under Georgia law, a "ministerial act" is "commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." *Grammens v. Dollar*, 697 S.E.2d 775, 777 (Ga. 2010) (quoting *McDowell v. Smith*, 678 S.E.2d 922, 924 (Ga. 2009)). In contrast, discretionary acts require "the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." *Id.*

Plaintiff argues that county policy and state law required Defendants to provide Ms. Johnson necessary medical care. (*See* Dkt. 1 at 38–41, 43–45, 46–48 (alleging Count X against all Defendants, Count XII against Brown and Mann, Count XIV against Brown and Mann).) She cites Georgia Code § 42-5-2, which requires an agency to provide inmates food, clothing, and needed medical and hospital attention; § 42-4-4, which requires the sheriff to provide inmates medical aid, heat, and blankets; and § 42-4-32, which requires jail officers to keep an eye on inmates and seek medical help if an inmate has a serious injury, wound, or illness. (*Id.* at ¶¶ 178–189.) She claims these statutes make the provision of medical services a ministerial act and, therefore, subject to the lower standard under official immunity. (Dkt. 70 at 25.)

The existence of a written policy or procedure, however, "does not automatically create a ministerial duty." *Barnett v. Atlanta Indep. Sch. Sys.*, 792 S.E.2d 474, 478 (Ga. Ct. App. 2016). The Supreme Court of Georgia has instead "rejected expressly the argument that an officer's failure to comply with state law or department policy while engaged in an otherwise discretionary act converts the officer's conduct into a ministerial act for purposes of official immunity." *Speight*, 579 F. App'x

at 759–60 (citing *Phillips v. Hanse*, 637 S.E.2d 11, 12 (Ga. 2006)). Georgia law also specifies that "the determination of what medical treatment to provide is an act of discretion subject to official immunity." *Graham*, 730 S.E.2d at 443–44 (emphasis removed). So, the determination of how to provide adequate medical care and what care to provide involved the use of discretion by all individual Defendants here. *See id.* at 444. The conduct is thus not ministerial but discretionary in nature.[6]

Plaintiff also claims Defendants Sheriffs Mann and Brown are liable for failing to train properly their subordinates (Count XII) and for the misconduct of the jailers (Count XIV). Deciding how best to staff and run a county jail — including how to train and supervise jail employees — is not a "simple, absolute, and definite" task that is "so clear, definite and certain as merely to require the execution of a relatively simple, specific duty." *See Jobling v. Shelton*, 779 S.E.2d 705, 710 (Ga. Ct. App. 2015). Instead, it requires the exercise of judgment and deliberation. *See*

---

[6] The Court notes that Plaintiff also has a larger proof problem in that none of these Defendants were the ones responsible for providing Ms. Johnson with medical care and none of the individuals who Plaintiff may have been able to hold accountable for denial of medical care or failure to respond to the emergency call button are parties to this lawsuit.

*id.* "The acts complained of are thus 'discretionary' and fall within the scope of [Defendants Brown and Mann's] official immunit[ies]." *See Harvey v. Nichols*, 581 S.E.2d 272, 276 (Ga. Ct. App. 2003) (internal quotation marks omitted), *disapproved on other grounds by City of Richmond Hill v. Maia*, 800 S.E.2d 573, 578 (Ga. 2017); *see also Norris v. DeKalb Cty.*, No. 1:06-CV-0381-CC, 2007 WL 9701954, at *15 (N.D. Ga. Mar. 6, 2007) (internal quotation marks omitted) (opining that "Georgia courts have consistently held that the operation of law enforcement departments, including how much training and supervision should be provided, is a discretionary governmental function as opposed to a ministerial, proprietary, or administratively routine function").

Under Georgia law, "actual notice of a hazardous condition gives rise to a ministerial duty on the part of an individual charged with responsibility to respond to such a condition." *Jobling*, 779 S.E.2d at 710; *see also Nelson v. Spalding Cty.*, 290 S.E.2d 915, 919 (Ga. 1982) (holding government employee had ministerial duty to replace missing stop sign once notified of its absence); *Barnard v. Turner Cty.*, 701 S.E.2d 859, 863 (Ga. Ct. App. 2010) (holding that actual notice of water over road created ministerial duty on the part of the county road superintendent to

respond); *Lincoln Cty. v. Edmond*, 501 S.E.2d 38, 42 (Ga. Ct. App. 1998) (finding road superintendent had ministerial duty to remove downed tree once he received notice that it was blocking road). In other words, when a public official knows of a hazardous condition, the official then has a ministerial duty to respond, although the determination of how to proceed may involve acts of discretion.

Plaintiff, however, has not raised an issue of material fact suggesting Defendants Mann or Brown had notice of a widespread history of ignoring the emergency call button or any other hazardous condition that might create a ministerial duty to act. In Defendants' statement of material facts, Defendants Mann and Brown assert there was (1) no "widespread history and/or custom" of ignoring inmates' use of emergency call buttons, (2) no "widespread history and/or custom" of officers failing to provide medical care or treatment to inmates, or (3) any reason to believe additional training was necessary to help employees identify inmates with medical needs. (Dkt. 67-2 at ¶¶ 24–27.) Plaintiff denied these assertions but failed to produce any contradictory evidence to support her denial and raise an issue of material fact. (Dkt. 71 at ¶¶ 25–27.) Likewise, Defendant Mann asserted he was unaware of a

"large number of grievances in relation to the duress button or emergency call button."  (Dkt. 67-2 at ¶ 24.)  Plaintiff concedes this as undisputed but then denies it "to the extent there are a plethora of complaints and lawsuits arising out of the same."  (*Id.*)  She did not, however, introduce any evidence of those alleges complaints or lawsuits or present any other evidence to suggest Defendants Mann and Brown were aware of a need to address the issue.  Given this record, Plaintiff has failed to present any evidence that Defendants Brown or Mann violated a ministerial duty to respond to a known hazardous condition.

**b.    There is No Evidence Defendants Acted with Actual Malice.**

Defendants thus are entitled to official immunity, absent evidence they acted with actual malice or intent to injure Ms. Johnson.  The Supreme Court of Georgia has defined actual malice in the context of official immunity to mean a "deliberate intention to do a wrongful act" or "an actual intent to cause injury."  *Adams v. Hazelwood*, 520 S.E.2d 896, 898 (Ga. 1999).  Actual malice does not, however, "include 'implied malice,' that is 'the reckless disregard for the rights or safety of others.'" *Kinlocke v. Benton*, 257 F. Supp. 3d 1368, 1381 (N.D. Ga. 2017) (quoting *Murphy v. Bajjani*, 647 S.E.2d 54, 60 (Ga. 2007)).

Defendants alleged that there was no evidence they acted with malice or intent to injure her. (Dkt. 67-1 at 31.) Plaintiff presented no evidence to refute this allegation. Indeed, as explained in the discussion of qualified immunity, there is no evidence Defendants Frazier or Lawton had any interaction with Ms. Johnson or even knew she existed before they received the emergency radio call. Likewise, there is no evidence the other Defendants knew who she was until after her death when the investigation began. The record lacks evidence sufficient to raise a genuine issue that any Defendant acted with actual malice or a deliberate intent to injure Ms. Johnson.

Ms. Johnson's death — at such a young age — was tragic. But, given the undisputed facts, the Defendants here are entitled to official immunity. The Court thus dismisses with prejudice Counts X, XII, and XIV of Plaintiff's complaint.

# V. Conclusion

For these reasons, the Court **GRANTS** Defendants' Amended Motion for Summary Judgment (Dkt. 67).

**SO ORDERED** this 14th day of March, 2019.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE